### NATIONAL BROADCASTING COMPANY, Plaintiff,

v.

### UNITED STATES SMALL BUSINESS ADMINISTRATION, Defendant.

No. 92 Civ. 6483 (LJF).

United States District Court,
S.D. New York.

Jan. 28, 1993.

Daniela Katherine Pacher, Gayle Chatilo Sproul, N.B.C. Inc., New York City, for Nat. Broadcasting Co.

David E. Sipiora, U.S. Atty's Office, S.D.N.Y., New York City, for U.S. Small Business Admin.

## MEMORANDUM & ORDER

FREEH, District Judge.

In this action, plaintiff National Broadcasting Company ("NBC") seeks access to certain documents in the possession of defendant the United States Small Business Administration (the "SBA"). The parties have cross-moved for summary judgment. Fed. R.Civ.P. 56. For the reasons stated below, both motions are granted in part and denied in part. Absent further objection consistent with this Order, the SBA shall produce Document 5 within ten (10) days. However, all other documents requested by NBC are exempt from disclosure, and need not be produced.

## BACKGROUND

On or about January 23, 1992, NBC submitted a request for information to the SBA pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In that request, NBC sought access to agency documents relating to the financial transactions of three companies: Apex Energy Corporation ("Apex"), Wood River Capital Corporation ("Wood River"), and Bridger Capital Corporation ("Bridger").

Wood River and Bridger are licensed "small business investment companies" ("SBICs") which had previously participated in the SBA's SBIC program.[1] Both compa-

---

1. Under that program, the SBA licenses, funds, and regulates SBICs by either guaranteeing debentures or purchasing SBIC preferred securi- ties. SBICs then provide capital to small businesses through loans or stock purchases.

nies are now engaged in self-liquidation pursuant to terms established by the SBA.

Apex is an ongoing company financed in part by Wood River and Bridger. Among other business activities, Apex engages in drilling for natural gas reserves.

Because its original request for information encompassed a large number of documents, at the SBA's suggestion, NBC reformulated and narrowed that request several times. On March 11, 1992, the SBA released some documents in response to that reformulated request. However, the SBA refused to produce other relevant documents pursuant to FOIA Exemptions 2, 4, 5, 8, and 9. 5 U.S.C. § 552(b)(2), (4), (5), (8), and (9). After NBC appealed the SBA's partial denial of its request, the SBA released several additional documents, most of which were partially redacted.

Following the initial pretrial conference in this action, NBC informed the Court and the SBA that it would further limit its request to ten (10) documents:

1. Letter dated June 6, 1991, from Herbert M. Friedman, Esq. ("Friedman") to Gail G. Green ("Green"), Chief, SBA Account Resolution Branch.

2. Letter dated May 29, 1991, from Brent J. Morse ("Morse"), President of Apex, to Wood River and Bridger.

3. Undated Apex Energy Cash Flow Projection and Estimate.

4. Sand Wash Basin Evaluation memorandum dated May 22, 1991, from Tom Stewart to Morse.

5. Letter dated May 21, 1991, from Exploration Manager to Morse.

6. Memorandum dated January 2, 1991, from Joseph Newell, Director, SBA Office of Investment, to Howard S. Cooper, Chief Counsel for Investment.

7. Memorandum dated January 29, 1991, from Martin D. Teckler, SBA Deputy General Counsel, to Bernard Kulik, SBA Associate Administrator for Investment.

8. Letter dated December 13, 1990, from Friedman to Mark Stephens, Esq., SBA Office of Litigation.

9. One page internal memorandum by Green.

10. Handwritten notes to file by Green, dated December 11, 1990.

By order dated November 6, 1992, the Court granted NBC's request to review the ten disputed documents *in camera*. In accordance with that order, the SBA submitted unredacted copies of the ten documents to the Court. The parties then filed their respective motions for summary judgment.

## DISCUSSION

█ It is well-established that the FOIA was designed to create "a broad right of access to official information." *Hopkins v. U.S. Department of Housing and Urban Development*, 929 F.2d 81, 83 (2d Cir.1991). Thus, when a proper FOIA request is made, disclosure is required "unless [the] information is exempted under clearly delineated statutory language." *Id.* (*quoting Department of Air Force v. Rose*, 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976)).

In arguing that all ten documents requested by NBC are exempt from production under the FOIA, the SBA relies on a number of different FOIA exemptions. The Court shall address each of the claimed exemptions separately.

*1. Documents 1–3, 5, 8: Exemption 4*

█ The SBA has declined to produce all or portions of Documents 1, 2, 3, 5 and 8 pursuant to FOIA Exemption 4, which saves from disclosure "trade secret and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). A document is "privileged or confidential" within the meaning of Exemption 4 if disclosure of that document would have "the effect either (1) of impairing the government's ability to obtain information—necessary information—in the future, or (2) of causing substantial harm to the competitive position of the person from whom the information has been obtained." *Continental*

*Stock Transfer & Trust Co. v. Securities and Exchange Commission,* 566 F.2d 373, 375 (2d Cir.1977) (*citing Charles River Park "A", Inc. v. Department of Housing and Urban Development,* 519 F.2d 935 (D.C.Cir.1975)).

■ The SBA correctly argues that Documents 1, 2, 3, and 8 all contain confidential financial information relevant to Apex's financial status and/or the financing of Apex by Wood River and/or Bridger.[2] Given the sensitive nature of that information, the Court finds that disclosure would both impair the SBA's ability to obtain similar information in the future, and cause harm to Apex's competitive position. (Morse Decl. ¶ 2).[3] Accordingly, the SBA will not be required to produce the requested documents.[4]

■ The SBA also argues that Document 5, a letter from an "Exploration Manager" to Morse, also qualifies as privileged or confidential information under Exemption 4. However, having reviewed that document, the Court does not find that it contains any information which would either impair the SBA's ability to obtain such information in the future or substantially impair Apex's ability to compete. Thus, Document 5 must be produced.[5]

## 2. *Document 4: Exemption 9*

■ FOIA Exemption 9 saves from disclosure any information relating to "geological and geophysical information and data, including maps, concerning wells." 5 U.S.C. § 552(b)(9). NBC has withdrawn its request for any documents involving any Exemption 9 information. (NBC Memo. at 4, 6 n. 1). As a result, Document 4, which contains such information, need not be produced.

## 3. *Documents 6–7: Exemption 5*

■ Exemption 5 of the FOIA protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Through this provision, "all the normal civil discovery privileges," including the attorney-client privilege, are incorporated into the FOIA. *United States v. Weber Aircraft Corp.,* 465 U.S. 792, 799, 104 S.Ct. 1488, 1492–93, 79 L.Ed.2d 814 (1984) (Exemption 5 "simply incorporates civil discovery privileges").

■ The SBA claims that Documents 6 and 7 fall within the scope of Exemption 5 because they contain information protected by the attorney-client privilege. The Court agrees. Document 6 constitutes a request for a legal opinion from the SBA's Chief Counsel for Investment. It is well-established that the attorney-client privilege protects from disclosure the "giving of informa-

---

**2.** Document 2, the May 29, 1991 letter from Morse to Wood River and Bridger, also contains geographic or geological information which is exempted from disclosure pursuant to FOIA Exemption 9. 5 U.S.C. § 552(b)(9).

**3.** NBC argues that the SBA and Apex have not adequately demonstrated that disclosure of the requested documents will cause Apex to suffer substantial competitive harm. (Reply at 5). While the Court agrees that the SBA should have provided more details regarding the likely harm to Apex, Apex's president has submitted a sworn declaration stating that disclosure of the confidential financial and geological information provided to the SBA "would adversely affect Apex's ability to compete with other parties." (Morse Decl. ¶ 2). Given this statement, the Court finds that disclosure of the requested documents would cause harm to Apex's competitive position.

**4.** In arguing that Exemption 4 does not apply here, NBC relies on *Buffalo Evening News, Inc. v.*

*Small Business Administration,* 666 F.Supp. 467 (W.D.N.Y.1987), a case concerning an FOIA request for the names of borrowers under a particular SBA program. In *Buffalo Evening News,* the court found that the requested information, which had been generated by the SBA, did not fall within the scope of Exemption 4 because that information had not been "obtained from a person," as required by the statute. 666 F.Supp. at 469. By contrast, in this case, the parties do not dispute that the requested information was obtained from persons outside the SBA. As a result, *Buffalo Evening News* is not controlling here.

**5.** Document 5 does make direct reference to geological issues. However, in asserting that that document is saved from disclosure, the SBA has not expressly relied on Exemption 9. If in fact the SBA does contend that Document 5 is exempt under Exemption 9 as well as Exemption 4, it may notify the Court within five (5) days of this Memorandum and Order, NBC may file opposing papers, if any, five (5) days thereafter.

tion to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States,* 449 U.S. 383, 390, 101 S.Ct. 677, 683, 66 L.Ed.2d 584 (1981). Since it is undisputed that the SBA has maintained the confidentiality of Document 6, that document is protected by the attorney-client privilege and need not be produced.

 Document 7, a preliminary legal opinion issued by the SBA's Deputy General Counsel in response to the request in Document 6, is similarly protected. As the Second Circuit recently noted, the attorney-client privilege includes not only information provided by a client to a lawyer, but also "professional advice given by an attorney that discloses such information." *In re Six Grand Jury Witnesses,* 979 F.2d 939, 944 (2d Cir.1992). Although it is only a "preliminary" legal opinion, Document 7 does disclose certain information provided by the SBA to its General Counsel, and thus is privileged within the meaning of FOIA Exemption 5.

### 4. *Documents 9–10: Exemption 5*

Exemption 5 also saves from disclosure all information subject to the "deliberative process" or "executive" privilege. *Hopkins,* 929 F.2d at 84 (in enacting Exemption 5, Congress "specifically had in mind" the " 'deliberative process' or 'executive' privilege"). The purpose of this portion of the statute is to protect the executive branch's decision-making process, "in order to safeguard the quality and integrity of governmental decisions." *Id.*

 In order to be exempt from disclosure under the deliberative process privilege, a document must be (1) "predecisional," that is, prepared " 'to assist an agency decisionmaker in arriving at his decision;' " and (2) "deliberative," or " 'actually ... related to the process by which policies are formulated.' " *Id.* (*quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 184, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1975); *Jordan v. United States Dep't of Justice,* 591 F.2d 753, 774 (D.C.Cir.1978) (en banc)).

 Document 9 is a single page of a memorandum from Gail Green ("Green"),

Chief of the SBA's Account Resolution Branch, Office of Liquidation, Investment Division, to her supervisor regarding the liquidation of a small business investment company ("SBIC") funded by the SBA. Document 10 is a single page of Green's handwritten notes, prepared while developing a recommendation for her supervisor regarding Wood River. Because both of these documents were prepared to assist the SBA in making agency decisions and were actually related to those policy decisions, Documents 9 and 10 are protected by the deliberative process privilege, and the SBA will not be required to produce those documents.

For the foregoing reasons, both motions for summary judgment are granted in part and denied in part. Absent further objection consistent with this Order, the SBA shall produce Document 5 within ten (10) days. However, because all the other documents requested by NBC are exempt from disclosure, the SBA will not be required to produce those documents.

SO ORDERED.